## WHITE *v.* UNITED STATES.

## FORD *v.* UNITED STATES.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 153, 154.  Argued January 7, 1915.—Decided January 17, 1916.

The act of March 4, 1913, c. 148, 37 Stat. 891, granting officers of the Navy, who had been advanced in rank, the pay and allowances of the higher rank, applies only to officers on the active list and does not apply to officers on the retired list who were assigned for active service after their retirement.

In construing a statute the court will regard it as more rational to assume that Congress was dealing with present affairs than that it was reopening finished transactions.

The general rule of statutes relating to duty and pay of naval officers is found in Rev. Stat., § 1462, providing that no officer on the retired list shall be employed in active duty except in time of war.

49Ct. Cl. 702, affirmed.

THE facts, which involve the construction of various statutes of the United States relating to pay of retired naval officers while on active service, are stated in the opinion.

*Mr. Frederick A. Fenning,* with whom *Mr. Lloyd*

*Odend'hal* and *Mr. Spencer Gordon* were on the brief, for appellant in No. 154:

The act of March 4, 1913, 37 Stat. 891, should be interpreted according to the usual meaning of its words.

By the usual meaning of its words the appellant comes within its provisions and has a valid claim against the United States.

The court should not go beyond the words of the act of March 4, 1913, 37 Stat. 891, to look for a more limited construction.

Appellant's claim does not involve a repeal of the act of June 7, 1900, 31 Stat. 703, and the act of August 22, 1912, 37 Stat. 328, 329, is not in point.   The act of March 4, 1913, 37 Stat. 891, allows appellant active pay.

In support of these contentions see *Maillard* v. *Lawrence*, 16 How. 255, 261; *The Cherokee Tobacco*, 11 Wall. 616, 620; *United States* v. *Temple*, 105 U. S. 97, 99; *Tyler* v. *United States*, 105 U. S. 224; *Knox County* v. *Morton*, 68 Fed. Rep. 787, 789; *Union Life Ins. Co.* v. *Champlin*, 116 Fed. Rep. 858, 860; *Tyler* v. *United States*, 16 Ct. Cls. 223; *Schuetze* v. *United States*, 24 Ct. Cls. 229; *Franklin* v. *United States*, 29 Ct. Cls. 6; *Fowler* v. *United States*, 31 Ct. Cls. 35; *Seers* v. *United States*, 46 Ct. Cls. 105.

*Mr. Simon Lyon*, with whom *Mr. Edward S. McCalmont* and *Mr. R. B. H. Lyon* were on the brief, for appellant in No. 153:

So long as the language used is unambiguous, a departure from the natural meaning is not justified by any consideration of its consequence, or public policy, and it is the plain duty of the court to give it force and effect. *Lake County* v. *Rollins*, 130 U. S. 662; *United States* v. *Goldenberg*, 168 U. S. 95; *Johnson* v. *So. Pac. Co.*, 196 U. S. 15.

It is fairly and justly presumable that the legislature which was unrestrained in its authority over the subject, has so shaped the law as without ambiguity or doubt, to

bring within it everything that was meant should be embraced. Cooley on Taxation (3d ed.), p. 464.

The statute must be held to mean what its language imports; when it is clear and imperative, reasoning *ab inconvenienti* is of no avail, and there is no room for construction. *Boudinet* v. *United States,* 11 Wall. 616; *Lewis* v. *United States,* 92 U. S. 621; *Lake County* v. *Rollins,* 130 U. S. 662.

Construction and interpretation have no function where the terms of the statute are plain and certain, and its meaning clear. *Colorado & N. W. R. R.* v. *United States,* 209 U. S. 544.

The statute is a remedial one and should be liberally interpreted. *Silver* v. *Ladd,* 7 Wall. 219; *Johnson* v. *So. Pacific Co.,* 196 U. S. 15; *Merchants Bank* v. *United States,* 42 Ct. Cl. 6; 1 Kent's Comm. 465.

In expounding remedial laws, the courts will extend the remedy as far as the words will admit. *Hayden's Case,* 3 Coke, 7; *Pierce* v. *Hopper,* 1 Strange, 253.

A remedial statute ought not to be construed so as to defeat in part the very purpose of its enactment. *Beley* v. *Naphtaly,* 169 U. S. 353; *Jones* v. *Guaranty Co.,* 101 U. S. 626; *Twenty Per Cent Cases,* 13 Wall. 575; *Ross* v. *Doe,* 1 Pet. 667.

Although the pendency of one class of claims may have induced the passage of an Act of Congress providing for their adjustment, the act may embrace other claims if its terms are sufficiently wide so to do. *United States* v. *Hvoslef,* 237 U. S. 1; *Thames-Mersey Ins. Co.* v. *United States,* 237 U. S. 19.

Where a law is plain and unambiguous, whether expressed in general or limited terms, there is no room left for construction, and a resort to extrinsic facts is not permitted to ascertain its meaning. *Bartlett* v. *Morris,* 9 Porter, 266; *United States* v. *Musgrove,* 160 Fed. Rep. 700; *Lake County* v. *Rollins,* 131 U. S. 671.

*Holy Trinity Church* v. *United States,* 143 U. S. 463; *Binns* v. *United States,* 194 U. S. 486, do not infringe this rule. See Blackstone's Introduction, § 2, p. 60.

*Mr. Assistant Attorney General Huston Thompson,* with whom *Mr. Richard P. Whiteley* was on the brief, for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

These claims raise the same question. The claimant White was a Lieutenant Commander in the Navy. On June 30, 1905, he was transferred to the retired list, on his own request, with the rank of Commander, (Navy Personnel Act of March 3, 1899, c. 413, §§ 8, 9; 30 Stat. 1004, 1006,) and on April 13, 1911, was commissioned a Commander on the retired list from June 30, 1905. (Act of March 4, 1911, c. 266; 36 Stat. 1354.) He was continued in active service from June 30, 1905, until October 31, 1911. (Naval Appropriation Act of June 7, 1900, c. 859; 31 Stat. 684, 703.) The claimant Ford was a Captain, was retired on May 19, 1902, under Rev. Stats., § 1444, with the rank of Rear Admiral, (Act of March 3, 1899, c. 413, § 11; 30 Stat. 1007,) and was commissioned Rear Admiral on the retired list from May 19, 1902. (Act of March 4, 1911, c. 266; 36 Stat. 1354.) He was continued on active duty from May 19, 1902, until December 25, 1907. (Act of June 7, 1900, c. 859; 31 Stat. 703.) As provided by the last-mentioned statute, both of these officers received the pay and allowances of the rank they held before they were retired. By the Naval Appropriation Act of March 4, 1913, c. 148, 37 Stat. 891, 892, it was enacted that "all officers of the Navy who, since the third day of March, eighteen hundred and ninety-nine, have been advanced or may hereafter be advanced in grade or rank pursuant to law shall be allowed the pay and allowances of the higher

grade or rank from the dates stated in their commissions." The claims are made under this act for the difference between the pay and allowances received during active service after retirement and that of the higher grade to which the claimants respectively had been advanced. Demurrers to the petitions were sustained by the Court of Claims.

The claimants, although pressing the universal application of the statute according to the literal meaning of its words, still tacitly concede that we must go behind the letter of the law. For while the statute says that all officers who have been advanced since the date mentioned shall have the pay of the higher grade and says nothing about active service, the claims are confined to the periods of active service named, which implies a concession that the advance in grade by itself was not enough. And this concession was required by the fact that the statute grants allowances as well as pay and that allowances are an incident of active duty alone.

As it stands admitted that the statute is of more limited scope than is apparent on its face, to an untrained reader, at least, the question is whether it is to be read as applying to all advanced officers who have been on active service or only to all such officers upon the active list. We are of opinion that the latter is the true meaning and that the decision of the Court of Claims was right. The general rule of the statutes is found in Rev. Stats., § 1462. "No officer on the retired list of the Navy shall be employed on active duty except in time of war." An exception, limited to twelve years from its passage, was made by the act of June 7, 1900, allowing officers on the retired list, in the discretion of the Secretary of the Navy, to be ordered to such duty as they might be able to perform, and giving them while so employed, the pay and allowances of the grade on the active list from which they were retired. When the act of 1913, under which these claims are made,

was passed, this exception had expired—all services under it had been rendered and paid for, and with other exceptions not affecting this case the general rule was in force. It is more rational to suppose that Congress was dealing with present affairs than that it was reopening transactions that might be ten years old and that must have been finished, at the latest, nearly a year before. And this construction is confirmed when we notice that the increased pay and allowances are given from the date of the commission, that is, if the claimants are right, from the date of their retirement without regard to the time when their active duty began. In these cases it was continuous with their service before retirement. But it might have begun years afterwards and yet by the statute the date of the increase in pay and the allowances would have been the same.

The conclusion to which the statutes directly concerned would lead us, is confirmed still further by consideration of the Naval Appropriation Act of August 22, 1912, c. 335; 37 Stat. 328, 329. This act provided that thereafter, any Naval Officer on the retired list might, with his consent, in the discretion of the Secretary of the Navy, be ordered to such duties as he might be able to perform, and while so employed in time of peace should receive the pay and allowances of an officer on the active list of the same rank, provided that he was not to receive more than the pay and allowances of a lieutenant, senior grade, on the active list of like length of service, and, if his retired pay exceeded that, then he was to receive his retired pay only. The clash that there would be between the policy of this act and that of 1913 if construed as the claimants would have it construed is plain.

Finally it may be worth noticing that the reports that introduced the enactment pointed out as the evil to be remedied that under the Act of June 22, 1874, c. 392; 18 Stat. 191, the only officers who did not receive the pay of

their grade from the time they took rank as stated in their commissions, were the youngest officers, who were appointed to the lowest grade and therefore not promoted to fill a vacancy as contemplated in the act of 1874. House Rep. No. 1089. 62d Cong., 2d Sess. Senate Rep. No. 1217. 62d Cong., 3d Sess.

*Judgments affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration and decision of these cases.